**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 10-80083-CR-MARRA/HOPKINS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

CHRISTIAN MANUEL GUTIERREZ,

    Defendant.
_____/

**REPORT AND RECOMMENDATION CONCERNING THE
GOVERNMENT'S ORAL MOTION FOR A *GARCIA* HEARING
TO DISQUALIFY DEFENSE COUNSEL (DE 18)**

**THIS CAUSE** comes before the Court upon an Order referring to the undersigned Magistrate Judge all dispositive pretrial motions for a report and recommendation and all non-dispositive pretrial motions for appropriate resolution. (DE 17).

For the reasons that follow, this Court **RECOMMENDS** that the District Court **GRANT** the Government's Oral Motion to Disqualify attorney Glenn H. Mitchell from representing Defendant Christian Manuel Gutierrez in this action.

**BACKGROUND**

The Defendant Christian Manual Gutierrez was indicted on June 15, 2010, on charges of making false and fictitious statements to a federally licensed firearms dealer. (DE 3). Defendant was initially represented by Jonathan Pinoli from the Federal Public Defender's office (DE 7), then by Glenn H. Mitchell, who entered his permanent appearance on June 21, 2010. (DE 16). On the date scheduled for a pre-trial detention hearing, June 23, 2010, the Government orally

1

moved for a hearing pursuant to *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975), to determine if a conflict of interest was posed by Glenn Mitchell's prior alleged representation of Saul Zorrilla, Gutierrez's cousin and a target of the investigation that has led to the defendant's Indictment. (DE 29 pg. 11).

Hearings on the conflict of interest issues were held on June 25, 2010 and June 29, 2010, in the Southern District of Florida, in West Palm Beach, Florida. (DE 19, 20). The Government was represented by Assistant United States Attorney (AUSA) John C. McMillan. The Defendant was represented by attorney Glenn H. Mitchell.  On July 12, 2010, The Defendant submitted a Pretrial Memorandum addressing the conflict issues. (DE 22).

At the June 25, 2010 hearing, Mr. Mitchell indicated that he had spoken with Saul Zorrilla. Mr. Mitchell proffered that  Zorrilla told him that they had talked in "connection with Mr. Gutierrez" and Mitchell recalled that he "may or may not have made a telephone call" on behalf of either the Defendant Gutierrez or Zorrilla to law enforcement to the effect that they would not speak with law enforcement without an attorney present.  Mitchell admitted that any conversation they might have had may be subject to attorney-client privilege, but asserted that he has no recollection of Mr. Zorrilla or any discussions with him.  Mr. Mitchell also asserted that he may have advised Mr. Zorilla about speaking with law enforcement and may have made a phone call to law enforcement on Mr. Zorrilla's behalf without having received any background information from Mr. Zorilla about his situation.  Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent Tim Trenschel testified that he and Special Agent Michael Barbercheck spoke to Zorrilla at the ATF office and at that time Zorrilla presented the agents with Mitchell's business card and told them that Mr. Mitchell was his attorney.  Trenschel further

stated that Agent Barbercheck called Mr. Mitchell about talking with Mr. Zorrilla. Agent Barbercheck told Mr. Mitchell that he was interested in getting Mr. Zorrilla's cooperation and that they wanted to know where the guns that Mr. Zorrilla had purchased had gone to. While Trenschel did not hear both sides of the conversation, it was clear that Mr. Mitchell and Mr. Zorrilla were not going to come talk with ATF. Defendant's counsel asserted that he had very little contact with Mr. Zorrilla, has no recollection of talking to Agent Barbercheck, and could not remember if he told ATF that he represented Mr. Zorrilla. Mitchell stated that he had spoken with Mr. Zorrilla, who agreed to waive any conflicts, and produced a hand-written document to that effect to the court. (DE 19). The *Garcia* hearing was continued until June 29, 2010, which was the first date that Special Agent Barbercheck was available. It was also continued to give Mr. Mitchell an opportunity to bring Mr. Zorrilla into court. Both sides agreed that the detention hearing could be held before the *Garcia* hearing was concluded. The detention hearing was held on June 25, 2010. (DE 29).

At the June 29, 2010, continuation of the *Garcia* hearing, Saul Zorrilla, Defendant, and ATF Special Agent Michael Barbercheck testified. (DE 20). Mitchell told the court that Zorrilla indicated to him that he met with attorney Mitchell, in Defendant Gutierrez's company, at Mr. Mitchell's office. Mitchell claimed to have no memory of the consultation or notes on Zorrilla. Special Agent Barbercheck testified that he was investigating Saul Zorrilla (on firearms charges related to Defendant Gutierrez), that Zorrilla told him Mitchell was representing him and produced the attorney's card, and that he called Mitchell, told him general information about the investigation, and got the impression that Mitchell represented Zorrilla.

Mr. Zorrilla and Defendant Gutierrez were advised that they each had a right to obtain

3

other counsel on the conflict issue. The Government advised that each may be asked or compelled to testify against the other in future proceedings. The Court advised each that a potential conflict of interest exists and of the consequences to their respective defenses if Mr. Mitchell continued to represent Defendant Gutierrez. They each indicated repeatedly by affirmative responses that they understood the potential conflicts and their possible impacts. Specifically, they understood that each may testify against the other, that Mitchell may have an obligation to use privileged information against Zorrilla, that Mitchell's representation of Gutierrez may be negatively affected by his prior representation of Zorrilla, and that neither client may be able to complain about Mitchell's continued representation later on if they waive the conflicts now. Neither Zorrilla nor Gutierrez were able to provide very extensive narrative responses when asked to explain what the potential conflicts were. Both men indicated that they freely and voluntarily waived their rights in order to permit Mitchell's continued representation of Defendant Gutierrez. The Government concluded that the waivers obtained were sufficient.

Mr. Mitchell advised the Court that he was unclear about whether an attorney client relationship existed between himself and Mr. Zorrilla. The Court allowed Mr. Mitchell two weeks to brief all the *Garcia* issues.

On July 12, 2010, Mr. Mitchell filed a Memorandum outlining his analysis of the *Garcia* issues. (DE 22). Mr. Mitchell admitted that "[i]f it was Mr. Zorrilla's subjective intent that he was represented, then an attorney-client relationship existed." *Id.* However, Mr. Mitchell asserted that he had no duty of loyalty to Mr. Zorrilla. *Id.* Mr. Mitchell also asserted that both Mr. Zorilla and the Defendant effectively waived any conflicts. *Id.*

4

## ANALYSIS

The right to conflict-free counsel is included in the Sixth Amendment right to effective assistance of counsel. *Duncan v. Alabama*, 881 F.2d 1013, 1017 (11th Cir. 1989). In determining whether to disqualify a defendant's counsel, a court must balance the right to counsel of defendant's choice with the defendant's right to a conflict-free attorney. *Wheat v. United States*, 486 U.S. 153, 162-63 (1988).

For a court to find a potential conflict of interest, both clients do not need to be charged in the same indictment or be subject to trial in the same proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 342 (1980); *United States v. Campbell*, 491 F.3d 1306, 1311 (11th Cir. 2007). The Supreme Court in *Wheat* found a serious potential for conflict where counsel had represented a government witness on related charges prior to his representation of the current defendant. 486 U.S. at 163-64. The Eleventh Circuit has also held that the district court properly disqualified defense counsel that had previously represented a co-defendant even though ultimately the trials were severed and the co-defendant never testified. *United States v. McCutcheon*, 86 F.3d 187, 188-90 (11th Cir. 1996).

The existence of an attorney-client relationship "hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional advice." *Lombardo v. United States*, 222 F. Supp. 1367, 1385 (S.D. Fla. 2002) (citing *Florida Bar v. Beach*, 675 So.2d 106, 109 (Fla. 1996)); *see also Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1282 (11th Cir. 2004) (noting that a putative client must consult an attorney with the "manifested intention of retaining him for legal services"); *United States. v. Schaltenbrand*, 930 F.2d 1554 (11th Cir. 1991) (Even though the attorney refused to represent the officer because of

a conflict of interest, the court found the communications of the officer to be protected because they were for the purpose of obtaining legal advice.). The Eleventh Circuit, in *dicta*, has referred to a single consultation as prior representation for purposes of conflict analysis. *See Freund v. Butterworth*, 165 F.3d 839, 865 (11th Cir. 1999) ("We assume, without deciding, that this brief consultation constituted a "representation" for purposes of a conflict of interest.").

In the instant case it is clear that Zorrilla believed that Mitchell represented him. Zorrilla told the agents that was the case and gave them Mitchell's business card. The agent called Mitchell about his representation of Zorrilla and was told by Mitchell that Zorrilla would not be speaking with them. Thus there was an attorney client relationship.

In deciding whether a potential conflict merits disqualification of defense counsel, this Court must inquire whether the subject matters of the prior and current representations are substantially related, in order to determine whether the potential defense counsel has "divided loyalties that prevent him from effectively representing the defendant." *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994). "If the conflict could cause the defense attorney improperly to use privileged communications in cross-examination, then disqualification is appropriate." *Id.* The representations must concern the "*very same* subject matter" or the "same events at issue" and that mere "vague similarities" like the type of offense committed will not permit a finding that the representations were substantially related. *Freund,* 165 F.3d at 864. A substantially related matter is found where the prior representation is "akin to the present action in a way reasonable people would understand as important to the issues involved." *United States v. Delorme*, 2009 U.S. Dist. LEXIS 2259 at *16-20, 2009 WL 33836 at *6 (S.D. Fla. January 5, 2009) (citing *Estate of Jones v. Beverly Health and Rehabilitation Servs., Inc.*, 68 F. Supp. 2d.

6

1304, 1310 (M.D. Fla. 1999) (quoting *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1346 (5th Cir. 1981)).

There is an irrebutable presumption of the disclosure of confidential information whenever there is an attorney-client relationship. *See United States v. Henry*, 307 Fed. Appx. 331, 335 (11th Cir. 2009) (citing *Freund* , 165 F.3d  at 859).  Once it is shown that the prior representation was "substantially related" to the current representation, then it is irrebutably presumed that relevant confidential information was disclosed.  *Id.*  An attorney's representations that he cannot recall any confidential information that would be useful in the cross-examination of a prior client does not alleviate the potential conflict because the situation might change. *United States v. Arnold*, 913 F. Supp. 348, 350 (E.D. Pa. 1995).

Here the prior representation was "substantially related" to the current representation. Mitchell's representation of Zorrilla, a target of the investigation that has resulted in the indictment of the Defendant, is directly related to the current representation.  The Government advised both clients that they could each be called upon to testify against the other.  Thus there is an irrebuttable presumption that confidential information was disclosed. *Freund* , 165 F.3d  at 859.  The disclosure could cause the defense attorney improperly to use privileged communications in cross-examination, thus meriting disqualification. *Ross*, 33 F.3d at 1523.

Where the prior representation was substantially related to counsel's current representation, courts in the Southern and Middle Districts of Florida have disqualified defense counsel on the strength of potential conflicts. *See Delorme*, 2009 U.S. Dist. LEXIS 2259 at *16- 20,  2009 WL 33836 at *6  (disqualifying counsel where counsel had previously represented a government witness on substantially related, but separate activities as the current defendant);

*United States v. Miranda*, 936 F. Supp. 945, 950-52 (S.D. Fla. 1996) (disqualifying counsel for prior representation of a government witness and rejecting proposal that independent counsel conduct cross-examination to alleviate conflict); *United States v. Culp*, 934 F. Supp. 394, 396-400 (M.D. Fla. 1996) (holding that counsel should be disqualified where he represented prospective government witnesses prior to the defendant on charges related to the instant action). When a witness at trial was defended by an attorney representing the defendant against charges related to an identical crime, the attorney has an "actual" conflict of interest. *United States v. Campbell*, 491 F.3d 1306, 1311 (11th Cir.2007).

A defendant's right to a conflict-free attorney can be waived "as long as the waiver is knowingly and intelligently made." *United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir. 1994); *Duncan*, 881 F.2d at 1017. In order to execute a valid waiver, "the defendant must be told (1) that a conflict of interest exists; (2) the consequences to his defense from continuing with conflict-laden counsel; and (3) that he has a right to obtain other counsel." *Duncan*, 881 F.2d at 1017 (citing *Zuck v. Alabama*, 588 5.2d 436, 440 (5th Cir. 1979), *cert. denied*, 444 U.S. 833 (1979)). A defendant must understand the possible conflicts and the potential perils of those conflicts. *Garcia*, 517 F.2d at 278. The waiver "must be established by clear, unequivocal, and unambiguous language" and a court must consider the "particular facts and circumstances surrounding the case, including the background, experience, and conduct" of the defendant in determining whether that waiver is intelligent. *United States v. Rodriguez*, 982 F.2d 474, 477 (11th Cir. 1993). While a narrative response from a defendant is preferable, "mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver." *Garcia*, 517 F.2d at 278. Here the clients each were advised at length by the

8

Government, Mr. Mitchell, and the Court of the potential conflicts, their consequences and their rights to conflict-free counsel.  While they were unable to provide extensive narratives reflecting their knowledge of the conflicts, their assent to the extended series of questions about their willingness to waive the conflicts was adequate, in the opinion of the Government, Mr. Mitchell, and the Court.

However, a court may decline a proffer of waiver where there is an actual conflict or a showing of a "serious potential for conflict," and prior representation of a potential Government witness can create that serious potential for conflict. *Wheat*, 486 U.S. at 162-64.

Zorrilla is a target of the same investigation that resulted in the Indictment of the Defendant.  The Government has advised them that they could each be called upon to testify against the other.  "If the conflict could cause the defense attorney improperly to use privileged communications in cross-examination, then disqualification is appropriate."  *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994).

Moreover, Mr. Mitchell cannot adequately advise either one about their option to cooperate against the other.  *See Baty v. Balkcom*, 661 F.2d 391, 395 (5th Cir.1981) (Unit B), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982) ("the conflict of interest before trial alone would be sufficient to grant ... [the] habeas petition" because "[h]ad he not been facing a conflict of interest, ... [the attorney] might have been able to negotiate a plea agreement on ... [one defendant's] behalf in return for becoming a prosecution witness against ... [the other defendant].").  *See also Ruffin v. Kemp*, 767 F.2d 748, 750-51 (11th

Cir.1985); *Burden v. Zant*, 24 F. 3d 1298, 1305 (11th Cir. 1994). Here the potential for conflict is serious. *Wheat*, 486 U.S. at 162-64. Thus the Court may "refuse to accept the waiver where necessary to ensure the adequacy of the defendant's representation, to protect the integrity of the court, and to preserve the trial judge's interest to be free from future attacks over the adequacy of the waiver and fairness of trial." *United States v. Almeida*, 341 F.3d 1318, 1323 (11th Cir. 2003).

## CONCLUSION

In light of the foregoing, this Court **RECOMMENDS** that the District Court **GRANT** the Government's Oral Motion to Disqualify attorney Glenn H. Mitchell from representing Christian Manuel Gutierrez in the instant case.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kenneth A. Marra, United States District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982), *cert. denied*, 460 U.S. 1087 (1983). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** in Chambers this 3 day of August, 2010 at West Palm Beach in the Southern District of Florida.

*James M. Hopkins*

_____

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:

United States District Judge Kenneth A. Marra

Counsel of Record